# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

MORNINGSTAR MARINAS/GOLDEN
ISLES, LLC,

    Plaintiff,

    v.

M/Y KANDER, her tackle,
apparel, furnishings,
equipment, and
appurtenances, *in rem*,

    Defendant.

CASE NO. 2:24-CV-31

## <u>ORDER</u>

This case is before the Court on Plaintiff's motion for default judgment, motion for an order directing the U.S. Marshals Service's sale, and motion for permission to credit bid its judgment. Dkt. No. 25. The Court held argument on January 13, 2025. Dkt. No. 30. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

### BACKGROUND

### I.   Factual Background

Plaintiff Morningstar Marinas is a North Carolina corporation doing business in St. Simons Island, Georgia. Dkt. No. 10 ¶ 3. Defendant M/Y Kander ("the Kander") is a yacht currently moored at a dock owned by Plaintiff on St. Simons Island, located within the Southern District of Georgia. <u>Id.</u> ¶ 4.

The Kander, a 1994 Hatteras seventy-foot vessel, is owned by Brendan Connelly and is managed and cared for by Lifestyle Maritime, LLC ("Lifestyle").[1] Id. ¶ 5. Lifestyle had the authority to enter into contracts on behalf of the Kander. Id. In June 2017, Lifestyle contracted with Plaintiff to lease a wet slip for the Kander and for the provision of necessaries such as dock rent, utility fees, late fees, and other maintenance fees for the vessel if Lifestyle or Connelly did not provide the same. Id. ¶ 7. On February 14, 2024, Plaintiff sent an invoice to both Lifestyle and Connelly for $10,348.82, reflecting the amount due for all necessaries as of December 31, 2023. Id. Despite several demands by Plaintiff, no one has paid any portion of the invoice billed. Id. Plaintiff filed this suit against the M/Y Kander in rem for recovery. Id. ¶¶ 7, 10.

## II. Procedural Background

Plaintiff brings against the Kander one count for arrest pursuant to Federal Civil Procedure Supplemental Rule C ("Rule C"). Id. at 3-4; see also FRCP Supp. AMC Rule C (setting forth special provisions for in rem admiralty and maritime actions). On June 20, 2024, the Magistrate Judge entered an order directing the Clerk of Court to issue a warrant for the arrest of the Kander. Dkt. No. 16. Additionally, the Magistrate Judge granted

---

[1] The model number of the Kander is 7CPMY, and the official Coast Guard number is 1075874. Dkt. No. 10 ¶ 5.

Plaintiff's request to be appointed as substitute custodian of the Kander. Id. The Clerk of Court issued the warrant of arrest on June 20, 2024, and on June 28, 2024, the U.S. Marshals Service arrested the vessel by serving the warrant and Plaintiff's amended complaint on the vessel. Dkt. Nos. 17, 18, 22 ¶ 2.

Plaintiff's notice of action *in rem* against the Kander and the arrest of the vessel was served by mail and email on the five entities that, to Plaintiff's knowledge, may have an interest in the Kander. Id. ¶ 4. The people served were (1) Brendan Connelly (owner of the Kander),[2] (2) Nancy Connelly (Brendan's wife), (3) Milo Pinckney, the President of Lifestyle,[3] (4) Seacoast Bank, the Kander's mortgagee,[4] and (5) Mark Cohen from Kahane & Associates, PA, the attorney representing Seacoast Bank.[5] Id. ¶¶ 4-7. Plaintiff also published notice of the arrest in the Brunswick News on four occasions: July 10, 2024, July 17, 2024, July 24, 2024, and July

---

[2] Mr. Connelly has filed for bankruptcy in Texas. Dkt. No. 22 ¶ 4. Plaintiff obtained an Order of Relief from Stay from the Southern District of Texas, Houston Division, Bankruptcy Court to allow it to enforce its rights against the vessel. Dkt. No. 21.
[3] Mr. Pinckney has not contacted Plaintiff or filed anything after the Kander was arrested. Dkt. No. 22 ¶ 5.
[4] Seacoast Bank originally tried to repossess the vessel but did not complete this effort because the vessel was in such poor condition. No one from Seacoast Bank has tried to contact Plaintiff or filed any pleadings. Id. ¶ 6.
[5] Plaintiff has not been contacted by Mr. Cohen or his law firm. Id. ¶ 7.

31, 2024.[6] Id. ¶ 8. No potential claimants or owners contacted Plaintiff in response to the published notice. Id. ¶ 8.

On September 11, 2024, Plaintiff filed a motion for default judgment which the Court construed as an application for entry of default pursuant to Federal Rule of Civil Procedure 55(a). Dkt. Nos. 22, 23. After no responses were filed by the deadline (September 25, 2024), Plaintiff filed this motion for default judgment and an order directing the sale of the vessel and permission to credit bid. Dkt. No. 25. No response was filed.

## LEGAL AUTHORITY

When a defendant fails to file an answer or otherwise defend, a court may enter judgment by default. Fed. R. Civ. P. 55(b)(2). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Prior to entering default judgment, the Court must investigate the legal sufficiency of the complaint's allegations. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009) ("'A default

---

[6] Plaintiff filed the Publisher's Affidavit in early September 2024. See Dkt. No. 20. Plaintiff's efforts to publish notice of the arrest satisfies the Southern District of Georgia Local Rules for Admiralty and Maritime Claims. The Local Rules require the notice be advertised once, and Plaintiff advertised the notice four times. See S.D. Ga. Admiralty & Maritime L.R. 3(a).

judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations.'" (quoting Nishimatsu Constr. Co., 515 F.2d at 1206)). "[A] default judgment cannot stand on a complaint that fails to state a claim." Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Surtain, 789 F.3d at 1245 (citation omitted). As a result, the Court must determine "whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (alterations adopted and internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "The entry of a default judgment is committed to the discretion of the district court." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985) (citations omitted). "After a default is entered against a defendant, he is deemed to have admitted the plaintiffs' well-pleaded factual allegations." Maus v. Ennis, 513 F. App'x 872, 880 (11th Cir. 2013) (citation omitted); see also Eagle Hosp. Physicians, LLC, 561 F.3d at 1307 ("A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" (citation omitted)).

**DISCUSSION**

I.  **Default Judgment**

  A. **Jurisdiction**

The Court has personal jurisdiction in this case. The suit invokes *in rem* jurisdiction, and the property in question, the Kander, is moored at a dock on St. Simons Island within the Southern District of Georgia. Dkt. No. 10 ¶ 4.

Subject matter jurisdiction is also satisfied under 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h). Proceeding *in rem* against a vessel is "distinctively an admiralty proceeding" and is "within the exclusive province of the federal courts." Am. Dredging Co. v. Miller, 510 U.S. 443, 446–47 (1994); see also Fla. Dept. of State v. Treasure Salvors, Inc., 458 U.S. 670, 676 (1982) ("The complaint invoked the court's admiralty and maritime jurisdiction pursuant to Federal Rule of Civil Procedure 9(h) and, as an admiralty action *in rem*, named the [ship] as defendant."); Madruga v. Sup. Ct. of State of Cal. in and for San Diego Cnty., 346 U.S. 556, 560–61 (1954) (stating that § 1333 gives district courts exclusive jurisdiction for maritime causes of action brought *in rem* against a vessel in order to enforce a lien); Moore v. M/V Sunny USA, 847 F. App'x 603, 608 (11th Cir. 2021) (holding that a district court properly asserted *in rem* jurisdiction that "attached through the maritime lien" and subject matter jurisdiction under 28 U.S.C. § 1333). Plaintiff's amended

6

complaint invokes the Court's admiralty jurisdiction because it is an *in rem* proceeding against a yacht and contains a cause of action for arrest pursuant to Rule C. Dkt. No. 10 ¶¶ 9-11.

**B. Is Default Judgment Proper?**

On September 12, 2024, default was entered in accordance with Federal Rule of Civil Procedure 55(a). Dkt. No. 24. Now, the Court concludes that entry of default judgment is proper. Fed. R. Civ. P. 55(b). When accepting the facts alleged in the complaint as true, there is a sufficient basis to show that Plaintiff has a maritime lien on the vessel and is, therefore, entitled to judgment in its favor for the services provided to the Kander. Surtain, 789 F.3d at 1245 (citation omitted).

Plaintiff's claim for arrest is made pursuant to Rule C of the Federal Civil Procedure Supplemental Rules for Admiralty or Maritime Claims. Plaintiff has satisfied the requirements to bring an *in rem* action under Rule C. This rule requires that the complaint for an action *in rem* must "be verified, describe with reasonable particularity the property that is the subject of the action, and state that the property is within the district." FRCP Supp. AMC Rule C(1)(a). Here, Plaintiff's complaint is verified, dkt. no. 10 at 6, it describes the yacht with particularity by identifying it as a 1994 Hatteras seventy-foot vessel with a model number of 7CPMY and coast guard number of 1075874, and it alleges

that the yacht is located on St. Simons Island within the Southern District of Georgia, id. ¶¶ 4-5.

Rule C also provides that "an action in rem may be brought to enforce any maritime lien." FRCP Supp. AMC Rule C(1)(a); see also Dkt. No. 10 ¶ 2. In addition to proceeding *in rem* against the vessel, the holder of a maritime lien can "seek damages against the party responsible for breach of contract." Addax Energy SA v. M/V Yasa H. Mulla, 987 F.3d 80, 86 (4th Cir. 2021).

"A maritime lien is a special property right in a ship given to a creditor by law as security for a debt or claim, and it attaches the moment the debt arises." Crimson Yachts v. Betty Lyn II Motor Yacht, 603 F.3d 864, 868 (11th Cir. 2010) (internal quotations and citations omitted). "The Federal Maritime Lien Act, 46 U.S.C. §§ 31341–31343, grants maritime liens to particular persons based on their relationship to, or service of, a vessel." Id. The result of enforcing a maritime lien is that the vessel becomes the obligor, so the plaintiff can proceed against it directly. Id. Based on the plain language of 46 U.S.C. § 31342, "to obtain a maritime lien, a person must: (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent." Galehead,

_Inc. v. M/V Anglia_, 183 F.3d 1242, 1244 (11th Cir. 1999). The Court addresses each of these requirements below.[7]

### 1. **Vessel**

Title 46 defines "vessel" in reference to 1 U.S.C. § 3, which provides that a vessel "includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." There is no debate that the Kander is a "vessel" within the meaning of the statute because a seventy-foot yacht is capable of transportation on water.

### 2. **Order of Owner/Agent**

The owner, officer, or agent of a vessel is assumed to have authority to obtain necessaries for a vessel. 46 U.S.C. § 31341. Accepting the facts alleged in the complaint as true, the Court finds Lifestyle had such authority. _See_ Dkt. No. 10. The facts alleged in the complaint and the attached exhibits[8] show that Lifestyle was the manager of the Kander.[9] _Id._ ¶ 6. As manager,

---

[7] For clarity purposes, the Court addresses the factors in the following order: (1) Vessel, (2) Order of Owner/Agent, and (3) Necessaries.

[8] "Under the Federal Rules of Civil Procedure, . . . exhibits [attached to the complaint] are part of the pleading 'for all purposes.'" _Griffin Indus., Inc. v. Irvin_, 496 F.3d 1189, 1205 (11th Cir. 2007) (quoting Fed. R. Civ. P. 10(c)) (citing _Solis-Ramirez v. U.S. Dep't of Justice_, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam) ("Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion.")).

[9] The contract with Morningstar Marinas lists Lifestyle as having ownership of the vessel. Dkt. No. 10 at 12. Accepting this as true provides significant support that Lifestyle is assumed to have

Lifestyle was charged with the care and maintenance of the vessel and had the authority to enter into a contract with Plaintiff to lease a wet slip for the Kander and for the provision of necessaries such as dock rent, utility fees, late fees, and certain maintenance fees. Id. ¶ 7. Accordingly, the complaint supports the finding that Lifestyle had the authority to enter into a contract for necessaries with Plaintiff on behalf of the Kander.

### 3. **Necessaries**

Congress provided in 46 U.S.C. § 31342(a)(1) that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on the vessel." "'[N]ecessaries' *includes* repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4) (emphasis added). The Eleventh Circuit has held that "the word 'includes' in this definition was not intended to be exhaustive" and "has been liberally construed to include what is reasonably needed in the ship's business, such as goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function." Bradford Marine, Inc. v. M/V Sea Falcon, 64 F.3d 585, 589 (11th Cir. 1995) (internal citations and quotations omitted). In other words, "[n]ecessaries are the things that a prudent owner would provide to enable a ship to perform well the

---

authority to enter into agreements for necessaries on behalf of the vessel.

functions for which she has been engaged." Id. (internal citations and quotations omitted). This could include things like money, labor, skill, personal services, or materials, but ultimately, "[w]hat is a 'necessary' is to be determined relative to the requirements of the ship." Equilease Corp. v. M/V Sampson, 793 F.2d 598, 603 (5th Cir. 1986) (en banc) (citation omitted).

As described above, the complaint alleges that the contract between Lifestyle and Plaintiff was for the lease of a wet slip and the provision of other "necessaries" like "dock rent, utility fees, late fees, and other fees to maintain the vessel if Lifestyle and the owner of the vessel did not [provide these items]." Dkt. No. 10 ¶ 7. These contracted-for services were provided by Plaintiff in an effort to protect the Kander from dangers or to maintain the vessel and, therefore, are properly considered "necessaries" that give rise to a maritime lien. M/V Sampson, 793 F.2d at 603; see also Inbesa Am., Inc. v. M/V Anglia, 134 F.3d 1035, 1037-38 (11th Cir. 1998) (stating that "dockage" is a maritime service).

Plaintiff satisfies the requirements under Rule C for bringing an action in rem, and Plaintiff sufficiently alleges it provided necessaries to the vessel on the order of the owner or agent. Accordingly, the Court holds that Plaintiff's complaint supports that it has a valid maritime lien on the M/Y Kander and entry of default judgment is proper.

11

**C. Damages**

"Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1541 (11th Cir. 1985) (citation and quotation omitted); Young Apartments, Inc. v. Town of Jupiter, Fla., 503 F. App'x 711, 720 (11th Cir. 2013) (stating that parties could file affidavits or other documents to support the fees and costs requested).

"In a maritime lien case, a plaintiff can recover damages resulting from a breach of contract." P&L Towing & Transp., Inc. v. M/V GAR-DEN S, No. 21-23062, 2022 WL 1812386, at *3 (S.D. Fla. 2022), report and recommendation adopted by 2022 WL 1801235 (June 2, 2022). "The proper value of the maritime lien is ordinarily the value of the underlying contract that gives rise to the lien." Anglia, 183 F.3d at 1247. Here, the damages sought for breach of contract giving rise to Plaintiff's lien amount to $10,348.82. The Court finds that Plaintiff is entitled to recovery of this amount for the services provided in accordance with the underlying contract.

Plaintiff also seeks costs for serving as substitute custodian at the rate of $262.50 per day.[10] The Court finds that

---

[10] "After arrest, the Marshal is responsible for preserving and safeguarding the arrested property. . . . As an alternative to

this rate, which is based on a fee of $3.75 per foot per day for a seventy-foot vessel, is reasonable. <u>See, e.g.</u>, <u>Island Gardens Deep Harbour LLC v. M/Y DESLIZE</u>, No. 22-cv-22991, 2024 WL 4286216, at *4 (S.D. Fla. Sept. 25, 2024) (collecting cases finding that daily substitute custodian fees ranging from $5 per foot to $5.16 per foot were reasonable).

Plaintiff has served as substitute custodian since June 28, 2024, at the approval of the Magistrate Judge.[11] Dkt. No. 14. The Court holds that Plaintiff is entitled to payment for this service as an "expense of justice" required by the "dictates of equity and good conscious." <u>Donald D. Forsht Assocs.</u>, 821 F.2d at 1561. As of the date of this judgment, January 21, 2025, Plaintiff has served as substitute custodian for 206 days at a rate of $262.50 per day and is owed $54,075.00.[12] Following the entry of this Order,

---

placing a keeper aboard a vessel, under the Marshal's surveillance, the plaintiff may choose to have a substitute custodian appointed. The appointment is conditioned on both the acceptance by the substitute custodian of all responsibility and liability during the appointment and on the moving party's agreement to hold the United States and the Marshal harmless from any claims arising during the substitute custodianship." <u>Donald D. Forsht Assocs. v. Transam. ICS, Inc.</u>, 821 F.2d 1556, 1560 (11th Cir. 1987) (citations omitted).

[11] The U.S. Marshals Service executed the arrest warrant on the Kander on June 28, 2024. Dkt. Nos. 17, 18.

[12] Plaintiff is not entitled to recovery for the ninety dollars per day that it claims to have paid for someone to check on the Kander three times each day. Dkt. No. 26. This cost was not included in the fee that Plaintiff set forth in its motion to serve as substitute custodian presented to the Magistrate Judge and the Court declines to add it now. Dkt. No. 14 ¶ 3.

Plaintiff is entitled to compensation for service as substitute custodian at the rate of $262.50 per day through the date of the U.S. Marshals Service's sale. See infra at Section II (discussing judicial sale and credit bid).

In total, Plaintiff is awarded a final judgment of $64,423.82 plus its daily rate ($262.50) for service as substitute custodian multiplied by the number of days between the date of this Order and the date of the vessel's sale, inclusively.

## II. Judicial Sale and Credit Bid

The Eleventh Circuit has provided the following overview of *in rem* actions in the admiralty context:

> A maritime lienholder initiates an *in rem* procedure against a vessel, or other property subject to the lien, by filing a complaint stating with particularity the circumstances from which the claim arises, describing the property subject to the lien and averring that the property is within the district or will be during the pendency of the action. Fed.R.Civ.P., Adm.Supp. C(2). If the reviewing court determines from the complaint that conditions for an *in rem* action exist, the clerk prepares and delivers to the Marshal a warrant for the arrest of the vessel. At this point the United States Marshal seizes or arrests, the vessel. This seizure is the essential ingredient of the *in rem* proceeding.

Donald D. Forsht Assoc., Inc., 821 F.2d at 1560. Here, Plaintiff can show it has a maritime lien against the vessel, see supra, the Magistrate Judge directed the Clerk of Court to issue a warrant for the arrest of the Kander, and the U.S. Marshals Service executed the warrant on June 28, 2024, dkt. nos. 16, 17, 18.

14

Accordingly, the "essential ingredient[s] of the *in rem* proceeding" are in place, <u>Donald D. Forsht Assoc., Inc.</u>, 821 F.2d at 1560, and Plaintiff can "proceed against the vessel directly," <u>M/V GAR-DEN S</u>, 2022 WL 1812386, at *6.

Courts in the Eleventh Circuit have interpreted the "right to proceed against the vessel directly" to mean the lienholder—Plaintiff—has the "right to appropriate the vessel, have it sold, and be repaid from the proceeds." <u>Id.</u> (citing <u>Harris v. M/V FATHOMS O'FUN</u>, No. 10-62038, 2011 WL 13319377, at *3 (S.D. Fla. July 18, 2011), <u>report and recommendation adopted</u>, 2011 WL 13319373 (Aug. 18, 2011)). Applying that interpretation to this case, the Court holds that Plaintiff has the right to request a sale of the Kander and to be repaid from the proceeds. Accordingly, the Court **DIRECTS** the U.S. Marshals Service to sell the M/Y Kander at auction after properly advertising the vessel for sale.

### A. Ability to Credit Bid

A party that bids on credit makes an offer and then, if accepted, pays by crediting the amount against a judgment held by the bidding party. <u>Redus Fla. Comm., LLC v. College Station Retail Center, LLC</u>, 777 F.3d 1187, 1191 n.9 (11th Cir. 2014); <u>In re Fontainebleau Las Vegas Holdings, LLC</u>, 434 B.R. 716, 732 n.19 (S.D. Fla. 2010) ("To 'credit bid' is, at a sale, to offset one's 'claims against the purchase price.'").

Eleventh Circuit precedent allows a plaintiff to credit bid a default judgment. In _Bollinger & Boyd Barge Service, Inc. v. Motor Vessel, Captain Claude Bass_, plaintiffs obtained default judgment against a vessel _in rem_ and were allowed to bid on the vessel any portion of the amount owed to them. 576 F.2d 595, 596–97 (5th Cir. 1978).[13] Moreover, several decisions from district courts within the Eleventh Circuit allow plaintiffs to credit bid. _See, e.g._, _Naval Logistic, Inc. v. A 58' Montery Motor Vessel_, No. 22-22539, 2024 WL 1286259, at *6 (S.D. Fla. Jan. 16, 2024) (collecting cases and stating "[c]ourts in this Circuit routinely permit U.S. Marshal sales of Defendant Vessels in like circumstances and permit the party enforcing a maritime lien to credit bit its judgment at the sale"), _report and recommendation adopted by_ 2024 WL 1285526 (Mar. 26, 2024); _Rickenbacker Marina, Inc. v. M/Y SANCOCHO_, No. 22-20788, 2023 WL 6279058, at *7 (S.D. Fla. July 17, 2023) (collecting cases showing that "[c]ourts in this Circuit routinely permit U.S. Marshal sales of Defendant Vessels in like circumstances and permit the party enforcing a maritime lien to credit bid its judgment at the sale"), _report and recommendation adopted by_ 2023 WL 6255011 (Sept. 26, 2023); _Naval_

---

[13] _Bonner v. City of Prichard_, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981).

16

Logistic, Inc. v. M/B Vamonos, No. 22-22540, 2024 WL 664535, at *1 (S.D. Fla. Feb. 16, 2024) (adopting the magistrate judge's report and recommendation and holding that plaintiff could credit bid its judgment at the vessel's sale); Schleef v. Sailing Vessel CLUELESS, No. 11-650, 2012 WL 2589237, at *7 (M.D. Fla. Apr. 26, 2012) (finding it was appropriate for plaintiff to credit bid his judgment at the sale of the vessel), report and recommendation adopted by 2012 WL 2586221 (July 3, 2012); Bank of Am. v. Hoy, No. 10-1029, 2010 WL 5463103, at *2 (M.D. Fla. Dec. 29, 2010) (holding that plaintiff was allowed to credit bid "in an amount not to exceed the amount of its judgment at the sale of the Vessel"); M/V FATHOMS O'FUN, 2011 WL 13319377, at *3 ("If the vessel is not sold at or over the minimum bid set by the Court, a party having a valid maritime lien who has paid custodia legis expenses and fees of the marshal may be permitted to 'bid on its credit,' or 'credit bid,' in lieu of paying cash at the public sale of the vessel."); M/V GAR-DEN S, 2022 WL 1812386, at *6 ("At the judicial sale, [plaintiff] should be entitled to credit bid the amount of its judgment at the auction.").

In light of the widespread authority from courts within this Circuit allowing credit bids, the Court hereby **GRANTS** Plaintiff's request to credit bid its final judgment.

## B. Ability for Credit Bid to Include Custodial Fees Through the Date of Sale

Plaintiff seeks to credit bid up to the amount of its final judgment plus the daily custodial fees to the date of the U.S. Marshals Service's sale. Dkt. No. 25 at 5. Put differently, Plaintiff would like its total credit bid amount to be the value of its final judgment, $64,423.82, plus its substitute custodian fee multiplied by the number of days between the entry date of this Order and the date of the vessel's sale.

Within the Eleventh Circuit, other district courts have permitted plaintiffs to credit bid their final judgment plus custodial expenses accrued until or through the date of sale. See, e.g., 5th Street Terminal, Inc. v. M/V Maraton, No. 17-24239, 2018 WL 3672273, at *3 (S.D. Fla. May 2, 2018) (allowing plaintiff to credit bid its final judgment including the custodial expenses "to be awarded until the vessel is released from the custody of the U.S. Marshal"), report and recommendation adopted, 2018 WL 3672250 (June 27, 2018); Beyel Bros., Inc. v. M/V Monarch Princess, No. 23-14121, 2023 U.S. Dist. LEXIS 187274, at *13–14 (S.D. Fla. Oct. 16, 2023) (awarding plaintiff custodial fees through the date of the judicial sale of vessel); M/V GAR-DEN S, 2022 WL 1801235, at *1 (adopting the magistrate judge's report and recommendation and awarding plaintiff custodial fees incurred through the date of the judicial sale of the vessel); Shoreline Marine Fuel Delivery, Inc.

v. M/V "Lisanne", No. 13-21301, 2013 U.S. Dist. LEXIS 204767, at *6-7 (S.D. Fla. Sept. 16, 2013) (concluding that plaintiff should be able to credit bid at U.S. Marshal auction using its final judgment with accruing custodial costs until the date of sale), report and recommendation adopted by 2013 U.S. Dist. LEXIS 204579 (Oct. 4, 2013).

Even district courts in other circuits have allowed plaintiffs to credit bid a final judgment plus custodial fees going through the date of sale. See, e.g., Cahuenga Assoc. II v. M/Y Gold Dust, No. 22-0307, 2023 WL 2958208, at *4 (S.D. Cal. Apr. 14, 2023) (authorizing plaintiff to credit bid the amount of its lien plus actual costs through the date of the sale, which included U.S. Marshal fees, substitute custodian fees and other custodia legis expenses); Shelter Cove Marina, Ltd. v. S/V ES VERITAS, No. 22-0359, 2022 WL 9529147, at *3 (S.D. Cal. Oct. 14, 2022) (allowing plaintiff to credit bid the amount of its lien as specified in the complaint plus the actual costs of the suit including U.S. Marshal and custodia legis expenses through the date of sale).

Here, Plaintiff requests to credit bid its final judgment plus the daily custodial rate ($262.50) multiplied by the number of days between the date this Order is entered and the date of the vessel's sale. Considering the copious support from district courts both within the Eleventh Circuit and beyond, the Court **GRANTS** Plaintiff's request subject to the following modification:

19

Plaintiff is entitled to credit bid its final judgment plus the daily custodial rate ($262.50) multiplied by the number of days *through* the date of the Marshal's sale.[14] The amount of accrued custodial fees should be determined once a date for the sale is set by the U.S. Marshals Service.

## CONCLUSION

Plaintiff's motion for entry of default judgment, dkt. no. 25, is hereby **GRANTED**. Plaintiff is entitled to a judgment of $64,423.82 plus accrued custodial expenses from the date this Order is entered through the date of sale, and Plaintiff may credit bid this judgment. The U.S. Marshal is directed to sell, as soon as possible, the Vessel, M/Y Kander, including her tackle, furnishings, equipment, apparel, and appurtenances at public auction in accordance with Supplemental Rule E of the Supplemental Admiralty Rules. The U.S. Marshal is ordered to comply with Local Admiralty Rule 4 in providing Notice of the Sale. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff and close this case.

---

[14] Plaintiff requests to include custodial fees for the days *between* the entry date of this Order and the date of sale. However, this leaves Plaintiff uncompensated for two days that it will serve as substitute custodian: (1) the date this Order is entered and (2) the date of the sale. The Court's modification remedies this—awarding custodial fees through the date of the vessel's sale accounts for both the date this Order is entered and the date of sale.

**SO ORDERED** this 21st day of January, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA